# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 25-CR-20443-MOORE

UNITED STATES OF AMERICA,

      Plaintiff,

vs.

RYAN CLIFFORD GOLDBERG,

      Defendant.

_____/

## RYAN GOLDBERG'S OBJECTIONS TO THE DRAFT PRE-SENTENCE INVESTIGATION REPORT

Ryan Goldberg, through undersigned counsel, files these objections to the draft Pre-Sentence Investigation Report ("PSI"). For the below reasons, Mr. Goldberg requests that the Court sustain his objections.

## I.    Offense Conduct

Mr. Goldberg requests to supplement the PSI's description of Victim 3 as a "medical clinic" to clarify that Victim 3 is a <u>plastic surgery clinic.</u> The practice markets itself as "blending artistry and expertise to deliver natural, confident results" where "art meets precision."[1] The lead surgeon advertises himself as "[h]ighly sought after for his breast augmentation and rhinoplasty outcomes."[2] According to its website, the only procedures offered are cosmetic: breast

---

[2] Rhinoplasty is more commonly known as a "nose job."

augmentation, breast lift, breast reduction, Brazilian butt lift, CoolSculpting, liposuction, "Mommy Makeover", tummy tuck, nose jobs, Boxtox, brow lift, eyelid surgery, facelift, fillers, and ear reshaping.

Mr. Goldberg requests this factual supplement because it is relevant to the Government's request to apply the "vulnerable victim" enhancement in U.S.S.G. § 3A1.1(b). (DE 75).

## II.   Legal Objections

<u>P. 40 Application of U.S.S.G. § 2B3.2(b)(3)(B)(IV)(V)</u>

Mr. Goldberg objects to the application of U.S.S.G. § 2B3.2(b)(3)(B)(IV),(V) resulting in a three-level enhancement. PSI ¶ 40. The PSI does not identify on what basis it applies the enhancement or which victim qualifies as "product tampering" or "critical infrastructure." But in any event, the offense conduct description does not include any "product tampering" or "critical infrastructures" as defined by the Guidelines.

U.S.S.G. § 2B3.2(b)(3)(B)(IV)(V) provides for a three-level enhancement if the offense involved "(IV) product tampering; or (V) damage to a computer system used to maintain or operate a critical infrastructure, or by or for a government entity in furtherance of the administration of justice, national defense, or national security." Application Note 1 provides that critical infrastructure means the following:

> [S]ystems and assets vital to national defense, national security, economic security, public health or safety, or any combination of those matters. A critical infrastructure may be publicly or privately owned. Examples of critical infrastructures include gas and oil production, storage, and delivery systems, water supply systems, telecommunications networks, electrical power delivery systems,

financing and banking systems, emergency services (including medical, police, fire, and rescue services), transportation systems and services (including highways, mass transit, airlines, and airports), and government operations that provide essential services to the public.

U.S.S.G. § 2B3.2, application note 1.

None of these examples, nor anything close, are noted in the Offense Conduct. True, a "critical infrastructure" may be "publicly or privately owned," but the companies must still be "systems and assets *vital* to national defense, national security, economic security, [or] public health and safety." U.S.S.G. § 2B3.2, application note 1 (emphasis added). No facts establish that any business victim provided any critical services, much less *vital* services. Indeed, the Offense Conduct's description of the victims is sparse, providing a mere two or three word description of the company. The Offense Conduct does not describe the victim business's client base, size, scope, or a description of *any* of the services provided. Nor does it describe any disruption at a local or national scale. On these facts—or lack of facts—the PSI has no basis to conclude that the business victims provided essential surfaces that rise to the scope and level of disruption of "critical infrastructure."

Moreover, a review of the historical application of the enhancement reveals that this enhancement is exceedingly rare. In the past five years, 409 cases were sentenced under U.S.S.G. § 2B3.2. Out of these cases, a sentencing court has only applied § 2B3.2(b)(3)(B) *once*. The undersigned has not located any authority upholding the application of § 2B3.2(b)(3)(B), and conferral with the Government and Probation has not produced any.  The table on the following page demonstrates this point.

3

| Fiscal Year | Total Cases Sentenced | Cases Sentenced Under U.S.S.G.   § 2B3.2 | Number of Cases Applying U.S.S.G. § 2B3.2(b)(3)(B) |
|---|---|---|---|
| 2024[3] | 64,028 | 160 | 0 |
| 2023[4] | 66,447 | 70 | 0 |
| 2022[5] | 65,862 | 65 | 0 |
| 2021[6] | 58,023 | 45 | 1 |
| 2020[7] | 63,907 | 68 | 0 |

The infrequency of this application makes sense. The Sentencing Commission amended § 2B3.2 in 2003, including a definition of "critical infrastructure" modeled from the US Patriot Act but "modified to ensure that the enhancement will apply to *substantial disruptions* of critical infrastructure that are regional, rather than national, in scope." United States Sentencing Guidelines Manual, App'x. C, amend.

---

[3] United States Sentencing Commission, *Use of Guidelines and Specific Offense Characteristics Guideline Calculation Based*, (2024), available at https://www.ussc.gov/research/data-reports/guideline/2024-guideline-application-frequencies.

[4] United States Sentencing Commission, *Use of Guidelines and Specific Offense Characteristics Guideline Calculation Based*, (2023), available at https://www.ussc.gov/research/data-reports/guideline/2023-guideline-application-frequencies.

[5] United States Sentencing Commission, *Use of Guidelines and Specific Offense Characteristics Guideline Calculation Based*, (2022), available at https://www.ussc.gov/research/data-reports/guideline/2022-guideline-application-frequenci

[6] United States Sentencing Commission, *Use of Guidelines and Specific Offense Characteristics Guideline Calculation Based*, (2021) available at https://www.ussc.gov/research/data-reports/guideline/2021-guideline-application-frequencies.

[7] United States Sentencing Commission, *Use of Guidelines and Specific Offense Characteristics Guideline Calculation Based*, (2020), available at https://www.ussc.gov/research/data-reports/guideline/2020-guideline-application-frequencies.

654 (effective Nov. 1, 2003) (emphasis added). But here, the Offense Conduct does not identify any victims that provide products or services related to "critical infrastructure," and it certainly does not include any facts demonstrating the "substantial disruption" on a regional or national scale that the Sentencing Commission envisioned in creating the enhancement. To the contrary, according to the PSI, Probation has *no information* regarding losses or damages of four out of five business victims. PSI ¶¶ 25, 26, 27, 28.

In sum, neither the plain language of § 2B3.2(b)(3) nor the commentary's definition supports the application of § 2B3.2(b)(3)(B). The historical data and amendment history further cautions against applying the enhancement, as the Sentencing Commission designed the enhancement to be rare, reserved for *serious* and *substantial* disruptions to essential public services. Because the Offense Conduct does not support any such disruption here, the enhancement should not apply.

### III.   <u>Factual Corrections to Part C: Offender Characteristics</u>

Mr. Goldberg requests that the PSI correct the below details in his Personal History Section.

<u>P. 58</u>: Mr. Goldberg's half sibling should be spelled "<u>Tiffany Chayet</u>."

<u>P. 62:</u> Mr. Goldberg does not own nor does he currently reside at the ███████ address. The ███████ home is owned by Mr. Goldberg's mother-in-law and will be the address that he intends to reside at upon release.

<u>P. 63:</u> Mr. Goldberg and his wife were married in <u>Colorado</u>.

5

<u>P. 64:</u> Mr. Goldberg did not report having no tattoos, rather he declined to report tattoos on the advice of counsel.

<u>P. 65:</u> Mr. Goldberg is diagnosed with ███████████, which is a condition where a ████████████████████.

P. 67: Mr. Goldberg has flashbacks of violent acts that occurred in Afghanistan while he was in Afghanistan as <u>a military contractor</u>.

<u>P. 82:</u> The PSI incorrectly lists the ███████ address as an asset of Mr. Goldberg. This home is solely owned by Mr. Goldberg's mother in law, who will allow Mr. Goldberg to reside at the home upon his release. Mr. Goldberg does not hold any interest in the property, and it should not be included as his asset.

<u>P. 86:</u> The ██████████ home is solely owned by Mr. Goldberg's <u>mother in law</u>.

## IV.    **Objections to Special Conditions**

P. 71: Mr. Goldberg objects to PSI's conclusion that Mr. Goldberg does not need substance abuse treatment. During the pre-sentence interview, Mr. Goldberg disclosed that he was drinking alcohol daily to avoid having night terrors connected to his military service. As reflected in the PSI, Mr. Goldberg also has a history of substance abuse with marijuana, cocaine, and mushrooms. During the interview, Mr. Goldberg stated that he "100%" had a substance abuse issue and shared how substance abuse has negatively impacted his relationship with his wife and family. Mr. Goldberg asked for any treatment opportunities available, and he reiterates that request here.

## V.   <u>Resulting Guideline Range</u>

The guideline range should be calculated as follows:

<u>Base Offense Level</u>: 18 (§ 2B3.2(a))

<u>Specific Offense Characteristics</u>: +7 Intended Loss Amount Greater than 9,500,000 (

§ 2B3.1(b)(7)(h))

<u>Adjustment for Role in the Offense</u>: + 2 Special Skill (§ 3B1.3)

<u>Adjusted Offense Level</u>: 27

<u>Acceptance of Responsibility</u>: -3 (§ 3E1.1)

<u>Zero Point Offender</u>: - 2 (§ 4C1.1)

<u>Total Offense Level</u>: 22

**<u>Resulting Guideline Range</u>: 41 – 51 months**

                         Respectfully Submitted,

                         HECTOR A. DOPICO
                         FEDERAL PUBLIC DEFENDER

          By:      /s/ *MaeAnn Dunker*
                         MaeAnn Dunker
                         Assistant Federal Public Defender
                         Special A#: A5502960
                         150 W. Flagler Street, Suite 1700
                         Miami, Florida 33130-1556
                         Tel: (305) 530-7000
                         Email: MaeAnn_Dunker@fd.org

7

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY certify that on **February 26, 2026,** I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: <u>*s/ MaeAnn Dunker*</u>
        MaeAnn Dunker