UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 25-CR-20443-KMM

UNITED STATES OF AMERICA

    Plaintiff,

v.

RYAN CLIFFORD GOLDBERG and
KEVIN TYLER MARTIN,

    Defendants.

_____

**DEFENDANT KEVIN MARTIN'S RESPONSE TO THE GOVERNMENT'S
OBJECTIONS TO THE PSI (DKT. 76)**

Mr. Martin respectfully responds to the Government's objection seeking a four-level enhancement under U.S.S.G. § 3A1.1(b)(1) and (b)(2). The Probation Office correctly declined to apply any victim-related adjustment.[1] The Government bears the burden of proving the applicability of a sentencing enhancement by a preponderance of the evidence, and it has not met that burden. Should this Court accept the Government's theory, it would expand § 3A1.1 to cover virtually every healthcare-related data breach. The Guideline and controlling Eleventh Circuit precedent do not permit such an expansion.

    A.    THE GOVERNMENT HAS NOT ESTABLISHED THE EXISTENCE OF ANY "UNUSUALLY VULNERABLE" VICTIM

Section 3A1.1(b)(1) applies only where a victim is "unusually vulnerable due to age, physical or mental condition, or otherwise particularly susceptible to the criminal conduct," and

---

[1] Dkt. 71, ¶ 47.

1

where the defendant knew or should have known of that unusual vulnerability. The Eleventh Circuit has made clear that vulnerability must be unusual and individualized; it cannot be inferred merely from membership in a class.[2]

The Government argues that patients of Victim Company 3, a California plastic surgery clinic, were vulnerable because the conspirators possessed personally identifiable information, protected health information, and surgical images. That argument conflates the sensitivity of information with the unusual susceptibility of a person. The PSR describes Victim Company 3 only as "a doctor's office" engaged in interstate commerce.[3] The record contains no findings regarding the age, mental condition, cognitive capacity, serious illness, or diminished ability of any identified patient. The Government does not identify a single patient who was elderly, incapacitated, cognitively impaired, or otherwise unable to protect his or her own interests.

In *Moran*, the enhancement was upheld where defendants targeted elderly dementia patients and the record demonstrated both incapacity and knowledge of that incapacity.[4] In *Duran*, the defendants exploited patients whose serious illnesses rendered them particularly susceptible and compelled participation in the fraudulent scheme.[5] By contrast, there is no evidence here that any patient was unusually vulnerable within the meaning of § 3A1.1. The Government's theory would effectively create a per se rule that all patients receiving medical care are vulnerable victims. That is not the law.

---

[2] *See United States v. Moran*, 778 F.3d 942, 978–79 (11th Cir. 2015); *United States v. Duran*, 620 F. App'x 687, 691–92 (11th Cir. 2013); *United States v. Hudson*, 822 F. App'x 888, 892–93 (11th Cir. 2020).
[3] Dkt. 71, ¶ 23.
[4] *See Moran* 778 F.3d at 978–79.
[5] *See Duran* 620 F. App'x at 691–92.

*Hudson* is instructive. There, the Eleventh Circuit reversed application of § 3A1.1 where the district court relied on generalized characteristics of the victim population without individualized proof of unusual vulnerability.[6] The Government's position here rests on even less. It relies solely on the existence of medical data and intimate images. The Guideline addresses unusual susceptibility rooted in age or physical or mental condition, not reputational risk or embarrassment resulting from disclosure of private information.

      B.      THE GOVERNMENT HAS NOT SHOWN THAT MR. MARTIN KNEW OR SHOULD HAVE KNOWN OF ANY UNUSUAL VULNERABILITY

Even assuming arguendo that vulnerability were established, which it is not, § 3A1.1(b)(1) further requires proof that Mr. Martin knew or should have known of such unusual vulnerability. The PSR's role assessment states that Mr. Martin "identified victims, exfiltrated data, and locked victim networks."[7] The PSR does not state that Mr. Martin selected Victim Company 3 because of patient frailty, incapacity, age, or medical susceptibility. It does not attribute to him any assessment of patients' personal conditions. It does not find that he targeted patients because of diminished capacity.

The Government relies heavily on excerpts of negotiation communications and dark web postings referencing "pictures of patients" and "po[r]n hub type content."[8] Those statements demonstrate awareness of reputational leverage. They do not demonstrate knowledge of unusual vulnerability rooted in age, illness, or incapacity. The initial ransom demand to Victim Company 3 was approximately $5,000,000.[9] The negotiation excerpts emphasize financial penalties,

---

[6] *See Hudson* 822 F. App'x at 892–93.
[7] Dkt. 71, ¶ 39.
[8] Dkt. 76 at 3-4.
[9] Dkt. 71, ¶ 32.

3

litigation exposure, asset liquidation, and the clinic's ability to obtain loans. Those are hallmarks of economic targeting, not exploitation of a victim's diminished ability to protect himself or herself.

The Eleventh Circuit requires individualized findings linking the defendant's knowledge to the victim's unusual susceptibility.[10] The Government offers no such findings here. Section 3A1.1 does not apply whenever a defendant threatens to disclose embarrassing material. It applies where a defendant exploits a victim's unusual vulnerability arising from age or physical or mental condition. The record contains no evidence that Mr. Martin ever did so.

### C.   III. THE GOVERNMENT HAS FAILED TO ESTABLISH A "LARGE NUMBER" OF VULNERABLE VICTIMS

The Government also seeks a two-level enhancement under § 3A1.1(b)(2), asserting that the offense involved a "large number" of vulnerable victims.[11] This enhancement requires proof of both vulnerability and numerosity. The Government establishes neither by a preponderance of the evidence.

The Government relies on plural references such as "patients," "lots of PII and PHI," and "sample of what is to come."[12] Plural language is not evidence of a "large number" within the meaning of § 3A1.1(b)(2). The Government provides no patient count, no estimate of affected individuals, no documentation of the number of images involved, and no evidence establishing how many individuals were allegedly unusually vulnerable.

---

[10] *See Moran*, 778 F.3d at 978–79.
[11] Dkt. 76 at 8-9.
[12] *Id.*

4

In *United States v. Grossman*, the enhancement was upheld where the defendant stipulated to targeting a large number of elderly retirees.[13] Likewise, in *United States v. Baptiste*, 935 F.3d 1304, 1318 (11th Cir. 2019), the inference of a "large number" was supported by record evidence of scale.[14] Here, there is no comparable evidentiary foundation. Without proof of both unusual vulnerability and the number of such vulnerable persons, § 3A1.1(b)(2) cannot apply.

### D. THE GOVERNMENT'S THEORY IMPROPERLY EXPANDS § 3A1.1 BEYOND ITS TEXT AND PURPOSE

The Government's position effectively converts the possession of sensitive medical information into a categorical vulnerable-victim enhancement. That expansion is inconsistent with the Guideline's text and the Eleventh Circuit's requirement of individualized findings. Section 3A1.1 is designed to address exploitation of unusual susceptibility, not the mere existence of private or sensitive information. Extending the enhancement to any healthcare data breach would create a de facto per se rule unsupported by precedent.

### CONCLUSION

The Probation Office correctly declined to apply any victim-related adjustment.[15] The Government has not established the existence of an "unusually vulnerable" victim, Mr. Martin's knowledge of such vulnerability, or the involvement of a large number of vulnerable victims. Accordingly, the Court should overrule the Government's objection and decline to apply any enhancement under U.S.S.G. § 3A1.1(b).

---

[13] *See United States v. Grossman*, 2023 WL 3918487, at *3–4 (11th Cir. June 9, 2023)
[14] *See United States v. Baptiste*, 935 F.3d 1304, 1318 (11th Cir. 2019),
[15] Dkt. 71, ¶ 47.

Respectfully submitted,

/s/ Tor Ekeland
Tor Ekeland (NYS Bar No. 4493631)
Tor Ekeland Law, PLLC
30 Wall St., 8th Floor
New York, NY
10005
t: (718) 737 - 7264
tor@torekeland.com

*Pro Hac Vice Counsel for Defendant Kevin Martin*

/s/ William Aaron Daniel
William Aaron Daniel (FL Bar No. 99739)
Asymmetric Legal
11900 Biscayne Blvd., Suite 400
Miami, FL
t: (305) 979 - 9296
f: (718) 504 - 5417
aaron@asymmetric.legal

*Designated Local Counsel for Defendant Kevin Martin*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 25-CR-20443-KMM

UNITED STATES OF AMERICA

    Plaintiff,

v.

RYAN CLIFFORD GOLDBERG and
KEVIN TYLER MARTIN,
    Defendant.

_____/

## CERTIFICATION OF SERVICE

I hereby certify that on this 26th day of February, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record.

Respectfully submitted,

/s/ William Aaron Daniel
William Aaron Daniel (FL Bar No. 99739)
Asymmetric Legal
11900 Biscayne Blvd., Suite 400
Miami, FL
t: (305) 979 - 9296
f: (718) 504 - 5417
aaron@asymmetric.legal

*Designated Local Counsel for Defendant Kevin Martin*

/s/ Tor Ekeland
Tor Ekeland (NYS Bar No. 4493631)
Tor Ekeland Law, PLLC
30 Wall St., 8th Floor
New York, NY
10005
t: (718) 737 - 7264
tor@torekeland.com

*Pro Hac Vice Counsel for Defendant Kevin Martin*